Pfeifer, J.,
concurring in part and dissenting in part.
{¶ 256} I concur in judgment. I write separately to emphasize aspects of the majority opinion that I find troubling.
{¶ 257} I continue to be concerned about how prosecutors employ and this court addresses course-of-conduct death specifications. In this case, it is clear beyond a reasonable doubt that the murder occurred during an aggravated robbery, R.C. 2929.04(A)(7). This death specification was sufficient to procure a *161 death sentence, rendering it unnecessary for the prosecutor to charge Perez with an attenuated course-of-conduct death specification under R.C. 2929.04(A)(5). See State v. Sapp, 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, at ¶ 130 (Pfeifer, J., dissenting); State v. Scott, 101 Ohio St.3d 31, 2004-Ohio-10, 800 N.E.2d 1133, at ¶ 111-116 (Pfeifer, J., dissenting).
{¶ 258} If this court continues to treat course-of-conduct specifications as expansively as it has, no jeopardy is likely to befall the prosecutors bringing them. Nevertheless, charging a course-of-conduct death specification when another specification is chargeable and relatively easy to prove is unnecessary to effect justice, uneconomical as to prosecutorial and judicial resources, and unlikely to benefit the public.
{¶ 259} In Scott, “[t]he two murders were unrelated, occurred 19 days apart, and involved two people that had no relation to each other. The two murders were not committed in a similar way, were not committed in the same transaction, and were not committed for a common reason. In short, the only thing the two murders had in common was the murderer.” Id., 101 Ohio St.3d 31, 2004-Ohio-10, 800 N.E.2d 1133, at ¶ 113 (Pfeifer, J., dissenting). In Sapp, “[t]he murder of Anderson occurred over a year after and was not related in any way to the murders of Morrow and Leach.” Id., 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, at ¶ 130 (Pfeifer, J., dissenting). In this case, the murder of Ronald Johnson occurred several months after the shooting at the Beverage Oasis. Although both incidents involved a robbery and the use of masks and guns to effect the robbery, little else binds them. One establishment was a retail store, the other a bar; one shooting was at an owner, the other of a customer; one involved Perez chasing employees, the other did not; one involved an armed victim who shot first, the other did not; even the guns used in the two crimes were different. Although both crimes were committed at night, one was as employees were closing, and the other involved an open-for-business bar. In short, there are no particularized facts that suggest that the first and second incidents were part of a course of conduct, especially when the eight-month gap is considered. There is no factual link “ ‘of time, location, murder weapon, or cause of death.’ ” State v. McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 161, quoting Sapp at ¶ 52. The course-of-conduct death specification in this case should not have been charged, should not have been presented to the jury, and should not be affirmed by this court.
{¶260} Equally troubling is that the trial court allowed the prosecution to present evidence of several robberies that did not involve murder or attempted murder to help prove the course-of-conduct death specification. The prosecutor had an extremely strong case on the aggravated-robbery specification. Why would he put this case at risk by presenting such potentially prejudicial “other *162 acts” evidence? Why introduce evidence of crimes that did not involve a murder or attempted murder to prove a “course of conduct involving the purposeful killing of or attempt to kill two or more persons”? R.C. 2929.04(A)(5). And most important of all, why would this court stamp its imprimatur on this unnecessary and improper use of other-acts evidence?
Stephen A. Schumaker, Clark County Prosecuting Attorney, for appellee.
Timothy Young, Ohio Public Defender, Pamela J. Prude-Smithers, Supervisor, Death Penalty Division, and Brie A. Friedman and Robert K. Lowe, Assistant Public Defenders, for appellant.
{¶ 261} Finally, I am baffled by the treatment of the marital-communications privilege contained in R.C. 2945.42, which allows a defendant to prevent the testimony of his or her spouse “concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture.” According to the majority opinion, although the privilege prohibits testimony about a spousal conversation, it does not prohibit the introduction of a tape recording of the actual conversation. What an insidious distinction! It eviscerates the intent behind the privilege and is in some ways worse than the admission of testimony. If a spouse testifies, the defendant at least has a right to cross-examine. Although I believe that the use of the tape recording was improper, I would deem the use of it to be harmless error given Perez’s confession.
{¶ 262} I concur in the judgment affirming the death sentence for the aggravated-robbery death specification. I dissent as to the imposition of the death sentence for the course-of-conduct death specification.